(23)



FILED

SEP 2 8 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

DPAS

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:                              )
                                    )
                                    )        Case No. 11-43193-B-13J
                                    )
                                    )
                                    )        DCN HLC-1
                                    )
JOHN STEPHEN FOWLER,                )
                                    )
        Debtor.                     )
                                    )
                                    )        MEMORANDUM DECISION ON
                                    )        OBJECTIONS TO CONFIRMATION OF
                                    )        CHAPTER 13 PLAN
                                    )
                                    )
                                    )
                                    )
                                    )
                                    )
_____       )


        The court is asked to determine whether Cal. Rev. & Tax Code ("RTC") § 4103(b) is unconstitutional as pre-empted by the Supremacy Clause of the United States Constitution.  Debtor contends that RTC § 4103(b) is not "applicable nonbankruptcy law" within the meaning of 11 U.S.C. § 511(a), that RTC § 4103(b) is therefore pre-empted by the Bankruptcy Code and that the interest rate to be paid on a secured real property tax claim in a chapter 13 plan is determined under Till et ux. v. SCS Credit Corp., 541 U.S. 465, 124 S.Ct. 1951, 1955-56, 158 L.Ed.2d 787 (2004).  For the reasons set forth herein, the court holds that RTC § 4103(b) is "applicable nonbankruptcy law" within the meaning of 11 U.S.C.

-1-

§ 511(a), that RTC § 4103(b) is therefore not pre-empted by the Bankruptcy Code and that RTC § 4103(b) does control the interest rate to be paid on a secured real property tax claim in a chapter 13 plan.

## FACTUAL BACKGROUND

The debtor, John Fowler, commenced the above-captioned chapter 13 bankruptcy case by the filing a voluntary chapter 13 petition on September 27, 2011.  Concurrently with the filing of the petition, the debtor filed his initial chapter 13 plan ("the Plan") on September 27, 2011.  The Plan was noticed to all creditors listed on the debtor's master address list consistent with the provisions of then-applicable General Order 05-03.[1]

The Plan proposes to payments of $779.30 per month over sixty months.  The Plan proposes treatment for two secured creditors: 1.) Rabobank, N.A., ("Rabobank") holder of the first deed of trust on the debtor's residence located at 3101 Orange Avenue, Oroville, California (the "Residence") and 2.) the County of Butte (the "County") holder of a lien in the Residence for unpaid real property taxes in the estimated amount of $968.00.  The debtor proposed to pay the County's claim at a rate of $18.00 per month at a rate of interest of 4.00% per annum.  The Plan proposed to pay no dividend to general unsecured creditors.

---

[1]General Order 05-03 has since been superseded by Local Bankruptcy Rule 3015-1, effective May 1, 2012.

1    The debtor also filed concurrently with his voluntary

2  petition his Schedule I Current Income of Individual Debtor

3  ("Schedule I") and Schedule J Current Expenditures of Individual

4  Debtor ("Schedule J").  Schedule I showed that the debtor had

5  monthly net income of $1,151.00, which consisted of the debtor's

6  social security benefits and a contribution from his brother for

7  the purpose of paying the ongoing debt service and arrears owed

8  to Rabobank.  Schedule J showed that the debtor had $371.70 in

9  average monthly expenses, leaving him with $779.30 in net monthly

10  income, the same amount as the proposed Plan payment.

11    On November 17, 2011, Rabobank filed an objection to

12  confirmation of the Plan.  Rabobank objected that the Plan's

13  proposal to pay interest at a rate of 4% on the County's tax

14  claim rendered the Plan unconfirmable because 11 U.S.C. § 511(a)

15  required the debtor to propose a rate of interest on the County's

16  claim in accordance with the rate determined by state law,

17  specifically RTC § 4103(b), which Rabobank argued required the

18  debtor to propose an interest rate of 18% per annum.  Rabobank

19  also objected to confirmation of the Plan on the ground that it

20  was not feasible, arguing that the budget set forth on the

21  debtor's Schedule J did not adequately account for the actual

22  cost of ongoing post-petition tax obligations, property

23  insurance, automobile insurance, home maintenance, medical and

24  dental expenses, transportation expenses.

25    Rabobank's objection was initially heard on December 6,

26  2011, and was opposed by the debtor, who asserted that RTC §

27

28                              -3-

1  4103(b) was invalid as violative of the Supremacy Clause of the

2  United States Constitution.   The objection was continued to

3  January 10, 2012, and finally to February 14, 2012 for

4  supplemental briefing, in which the County participated by filing

5  a brief on February 7, 2012.[2]  The objection was also continued

6  to allow the debtor to give notice to the Attorney General of the

7  State of California pursuant to Fed. R. Bankr. P. 9005.1 that the

8  debtor was objecting to the constitutionality of RTC § 4103(b)

9  under the Supremacy Clause of the United States Constitution,

10 Article VI, clause 2.   The debtor, Rabobank and the County filed

11 supplemental briefing.   The State of California did not appear in

12 response to the debtor's notice and has not made any appearance

13 in this case.   The court took Rabobank's objection under

14 submission on February 14, 2012.

15

16                              ANALYSIS

17

18     The court must determine whether RTC § 4103(b) violates the

19

20     [2] On October 23, 2011, prior to the deadline for filing
21 objections to confirmation of the chapter 13 plan, the County
   filed a letter from Amy Barker, Deputy Tax Collector (Dkt.
22 19)(the "Letter"), objecting to the debtor's plan on the ground
   that it did not provide for payment of the County's claim at a
23 rate of 18% per annum.   The objection contained in the Letter was
   not set for hearing because the County had not filed a notice of
24 hearing with the Letter.   In connection with the supplemental
   briefing ordered by the court on January 10, 2012 (Dkt. 53), the
25 County filed, through counsel, a supplemental brief raising the
   same objection as set forth in the Letter.   The court treats the
26 objection regarding the rate of interest to be paid on the
27 County's claim as one raised by both Rabobank and the County.

28                              -4-

Supremacy Clause of the U.S. Constitution.   The debtor argues
that § 4103(b) is unconstitutional because it converts
California's 18% redemption penalty into an interest rate for
bankruptcy purposes only, which makes it a "bankruptcy-specific"
statute that treats non-bankrupt taxpayers and taxpayers in
bankruptcy differently.   The debtor argues that because it is a
bankruptcy-specific statute, RTC § 4103(b) is not "applicable
non-bankruptcy law" for the purposes of 11 U.S.C. § 511 and goes
beyond the authority granted by § 511.

## Is Cal Rev. & Tax Code § 4103(b)
## Invalid as Violative of the Supremacy Clause?

The treatment of secured claims, like that of the County, in
a chapter 13 plan is governed by the provisions of 11 U.S.C. §
1325(a)(5).   Section 1325(a)(5) requires, inter alia, that either
the holder of the claim accepts the treatment of the claim under
the plan, or that the claim holder (1) retains its lien until
payment of the claim or the debtor is discharged under § 1328 and
(2) the value, as of the effective date of the plan, of property
to be distributed under the plan on account of the claim is not
less than the allowed amount of the claim.

With respect to secured claims based on tax obligations, 11
U.S.C. § 511(a) states:

(a) if any provision of this title requires the payment
of interest on a tax claim or on an administrative
expense tax, or the payment of interest to enable a

-5-

creditor to receive the present value of the allowed
amount of a tax claim, the rate of interest shall be
the rate determined under applicable nonbankruptcy law.

11 U.S.C. § 511(a).

RTC § 4103 sets forth requirements for redemption penalties
on unpaid tax obligations and interest rates on claims for unpaid
state taxes in bankruptcy cases, and states in relevant part:

(a) Redemption penalties are the sum of the following:

(1) Beginning July 1st of the year of the declaration
of tax default, on the declared amount of defaulted
taxes at the rate of 1 1/2 percent a month to the time
of redemption.

. . . .

(b) For purposes of an administrative hearing or any
claim in a bankruptcy proceeding pertaining to the
property being redeemed, the assessment of penalties
determined pursuant to subdivision (a) with respect to
the redemption of that property constitutes the
assessment of interest.

Cal. Rev. & Tax Code § 4103 (emphasis added).

RTC § 4103(b) was enacted in 1996 in part to clarify the
right of holders of secured claims based on unpaid real property
taxes to the inclusion of post-petition interest in such claims
to the extent they were oversecured.  Without RTC § 4103(b),

-6-

1   which stated that the redemption penalty in RTC § 4013(a)

2   constituted interest for bankruptcy purposes, holders of such

3   claims could claim as part of the secured claim, in addition to

4   the tax owed, only "fees, costs and charges" to the extent that

5   they were reasonable.  See United States v. Ron Pair Enters.,

6   Inc., 489 U.S. 235 (1989); John N. Tedford, Characterization,

7   Classification, Payment and Treatment of Real Property Tax Claims

8   Arising Under California Law, 32 Cal. Bankr. J. 1, 30-33

9   (2012)(describing history of California real property tax

10  statutes).

11      Rabobank and the County argue that pursuant to the foregoing

12  statutes, the County's secured claim based on unpaid real

13  property taxes must be paid for in full by the Plan with a rate

14  of interest of 18% per annum, as the one and one-half percent

15  redemption penalty described in RTC § 4103(a) is to be treated as

16  an interest rate on a claim in bankruptcy.

17      The debtor disagrees.  The debtor argues that he is not

18  required to pay the County's claim at a rate of 18% per annum

19  pursuant to RTC § 4103(b) because that subsection is

20  unconstitutional and preempted by the Bankruptcy Code under the

21  Supremacy Clause of the U.S. Constitution, and that he is instead

22  free to propose a lower rate that is consistent with Till et ux.

23  v. SCS Credit Corp., 541 U.S. 465, 124 S.Ct. 1951, 1955-56, 158

24  L.Ed.2d 787 (2004).  Till directs this court to conduct a present

25  value calculation as of the effective date of the plan by

26  starting with the risk free rate (i.e., the prime rate) and

27

28                          -7-

adjusting upward for appropriate risk factors to reach an
appropriate interest rate.  The debtor argues that RTC § 4103(b)
does not apply to this case or to any other bankruptcy case in
which a California state tax claim is involved because RTC §
4103(b) is a "bankruptcy specific" statute that is preempted by
the Bankruptcy Code pursuant to the Supremacy Clause of the U.S.
Constitution because § 4013(b) has a disparate impact on debtors
and non-debtors.

The Supremacy Clause provides that the "Constitution and the
Laws of the United States which shall be made in Pursuance
thereof . . . shall be the supreme Law of the Land . . . any
Thing in the Constitution or Laws of any State to the Contrary
notwithstanding."  U.S. Const. art. VI, cl. 2.   "The Supremacy
Clause and the doctrine of preemption, which implements it,
operate to invalidate state statutes to the extent they are
inconsistent with, or contrary to, the purposes or objectives of
federal law."  In re Appelbaum, 422 B.R. 684, 688 (9th Cir.
2009)(citing Perez v. Campbell, 402 U.S. 6637, 652 (1971)).

The debtor's argument hinges on his interpretation of the
phrase "applicable nonbankruptcy law" found in § 511(a),
specifically his statement that "Congress uses the phrase
'applicable nonbankruptcy law' as a limitation to nonbankruptcy
law that is not bankruptcy specific."  Put another way, the
debtor takes the position that "applicable nonbankruptcy law" is
law that is (1) not part of the Bankruptcy Code, (2) is not
intended to apply specifically only to bankruptcy cases and (3)

-8-

does not treat debtors and non-debtors differently, i.e., it does
not have a disparate impact on debtors and non-debtors.  Applying
the debtor's theory to this case, the debtor argues that RTC §
4103(b) does not fit within the definition of "applicable
nonbankruptcy law" because it provides for payment of an interest
rate on delinquent property tax claims only for debtors in
bankruptcy proceedings; non-debtors are required to pay a
"redemption penalty" as set forth in RTC § 4103(a).  The debtor
argues that the payment of a redemption penalty by non-debtors
and the payment of an interest rate by debtors results in
disparate treatment of the two groups because a debtor in
bankruptcy who pays an interest rate on a tax claim will be able
to claim a federal tax deduction for the interest paid, while the
non-debtor will not be able to claim a federal tax deduction
based on payment of a redemption penalty.

Finally, if RTC § 4103(b) is invalid, because RTC § 4103(a)
does not describe an interest rate but a "penalty," the debtor
argues that there is no California statute which constitutes
"applicable nonbankruptcy law" for the purposes of § 511(a).
Therefore, the debtor argues, he is entitled to propose an
interest rate that is consistent with Till.

The court disagrees with the debtor's interpretation of the
phrase "applicable non-bankruptcy law."  The debtor cites In re
Appelbaum, 422 B.R. 684, 690 (9th Cir. BAP 2009) to support his
contention that "Congress uses the phrase 'applicable
nonbankruptcy law' as a limitation to nonbankruptcy law that is

1  not bankruptcy specific." <u>Appelbaum</u> involved a chapter 7

2  trustee's challenge to the constitutionality of Cal. Civ. Proc.

3  Code § 703.140, which provides for exemptions that are applicable

4  only to debtors in bankruptcy proceedings, and which exemptions

5  are similar but not identical to the federal bankruptcy

6  exemptions listed in 11 U.S.C. § 522(d).  The chapter 7 trustee

7  in <u>Appelbaum</u> "did not challenge the state's authority to adopt

8  its own exemptions, but challenge[d] the separate bankruptcy-only

9  exemption statute."  <u>Id.</u> at 690.  The <u>Appelbaum</u> court then went

10  on to state:

11     The Constitutional analysis, however, is the same.

12     Section 522(b) "allows the States to define what

13     property a debtor may exempt from the bankruptcy estate

14     that will be distributed among his creditors."  <u>Owen v.</u>

15     <u>Owen</u>, 500 U.S. 305, 306, 111 S.Ct. 1833, 114 L.ED.2d

16     350 (1991).

17     . . . .

18     Section 522(b)(3)(A) defines exempt property as "<u>any</u>

19     property that is exempt under federal law, . . . or

20     State or local law that is applicable" at the petition

21     date in the place the debtor is domiciled.  11 U.S.C. §

22     522(b)(3)(A)(emphasis added).  Congress did not limit

23     the exempt property to a state's "applicable non-

24     bankruptcy law" (as it did in § 522(b)(3)(B)(regarding

25     property held in tenancy by the entirety.)  <u>See</u>

26     <u>Russello v. United States</u>, 464 U.S. 16, 23, 104 S.Ct.

28                        -10-

1   296, 78 L.Ed.2d 17 (1983)(where Congress includes
2   particular language in one section of a statute but
3   omits it from another, it is presumed that Congress
4   acted intentionally and purposely).  Therefore, there
5   is simply no requirement that the state or local law
6   referenced in § 522(b)(3)(A) be the same as the law
7   that applies to non-bankruptcy debtors.  Sheehan v.
8   Peveich, 574 F.3d 252 (Congress did not restrict the
9   states' authority to adopt exemptions with a
10  requirement that exemptions apply equally to bankruptcy
11  and non-bankruptcy cases).  As a result, a separate
12  bankruptcy-only exemption scheme is not in and of
13  itself preempted by the Supremacy Clause.
14  Appelbaum, 422 B.R. at 690.
15      The debtor seizes on the last two sentences from
16  Appelbaum quoted as proof that the phrase "applicable non-
17  bankruptcy law" is defined by the Ninth Circuit as law that
18  applies equally to debtors in bankruptcy and debtors or
19  individuals who are not in bankruptcy, wherever it appears in the
20  Bankruptcy Code.  Appelbaum does not stand for such a far-
21  reaching proposition, however.  The language quoted above really
22  stands for the narrower proposition that, given the difference in
23  the language between two consecutive subsections of § 522(b)(3),
24  there can be no implication that § 522(b)(3)(A) is intended to
25  limit state exemption laws to those that are also applicable to
26  non-bankruptcy debtors.
27
28                              -11-

Nor does the authority cited by the <u>Appelbaum</u> court, <u>Sheehan</u>
<u>v. Peveich (In re Sheehan)</u>, 574 F.3d 248 (4th Cir.2009), define
the phrase "applicable non-bankruptcy law" in the manner urged by
the debtors.  In fact, <u>Sheehan</u>, a short decision that was also
concerned with the constitutionality of a "bankruptcy-specific"
exemption scheme, makes no reference whatsoever to any definition
of the phrase.  <u>Sheehan</u>'s Supremacy Clause analysis says:

> The Supremacy Clause and the doctrine of preemption
> invalidate state statutes to the extent they are
> inconsistent with or contrary to the purposes or
> objectives of federal law.  <u>Wisconsin Pub. Intervenor</u>
> <u>v. Mortier</u>, 501 U.S. 597, 604, 111 S.Ct. 2476, 115
> L.Ed.2d 532 (1991). There are three ways federal law
> may preempt state law. First, federal legislation may
> preempt state law by expressly declaring Congress'
> intent to do so. <u>Cox v. Shalala</u>, 112 F.3d 151, 154 (4th
> Cir.1997). Second, Congress can " 'occupy the field' by
> regulating so pervasively that there is no room left
> for the states to supplement federal law." <u>Id.</u> Third, a
> state law is pre-empted "to the extent that it actually
> conflicts with federal law." <u>Id.</u> There can be no
> preemption, however, where Congress "expressly and
> concurrently authorizes" state legislation on the
> subject. <u>Rhodes v. Stewart</u>, 705 F.2d 159, 163 (6th
> Cir.1983). <u>"In such instance, rather than preempting</u>
> <u>the area, Congress expressly authorizes the states to</u>

'preempt' the federal legislation." Id.

Section 522(b)(1) affords the states the authority to restrict their respective residents to exemptions promulgated by the state legislatures, if they so choose. This statutory provision is an express delegation to the states of the power to create state exemptions in lieu of the federal bankruptcy exemption scheme. See Hovis v. Wright, 751 F.2d 714, 716 (4th Cir.1985) (concluding that § 522(b)(1) grants the states broad power to craft state exemption laws applicable to bankruptcy proceedings). Congress has not seen fit to restrict the authority delegated to the states by requiring that state exemptions apply equally to bankruptcy and non-bankruptcy cases, and we are without authority to impose such a requirement.

Sheehan, 574 F.3d at 252 (emphasis added). The court declines to derive the debtors' definition of the phrase "applicable nonbankruptcy law" from the foregoing analysis.

The debtor also urges the court to follow the decision of the Bankruptcy Court in the Northern District of California in In re Collier which specifically addresses the issue before the court here and which held that

Cal. Rev. & Tax Code § 4103(b) is preempted by the Bankruptcy Code and may not be applied to a bankruptcy debtor. Congress' intent in enacting 11 U.S.C. § 511(a) was clearly to prevent any distinction between

1    bankruptcy and nonbankruptcy debtors with respect to

2    the interest rate imposed on delinquent tax claims.

3    The thrust of § 4103(b) is directly opposed to that

4    intent: i.e., it creates a distinction between the two

5    types of taxpayers.

6 Collier, 416 B.R. at 718 (emphasis added).[3]

7        This court disagrees with Collier's holding.  Collier

8 court's articulated the question to be answered by its preemption

9 analysis as follows:

10    The question is whether Congress's intent in enacting §

11    511(a) was to permit states to enact a bankruptcy

12    specific interest rate or merely to subject bankruptcy

13    debtors to the same interest rate imposed on

14    nonbankruptcy debtors under state law.

15 Id. at 716.

16        Collier then goes on to cite MSR Exploration, Ltd. v.

17 Meridian Oil, Inc., 74 F.3d 901, 913 (9th Cir. 1996) for a

18 general description of the doctrine of preemption.  Collier then

19 discusses two cases in which the Ninth Circuit Court of Appeals

20 held that California state statutes were preempted by the

21 Bankruptcy Code: Sherwood Partners, Inc. v. Lycos, Inc., 394 F.3d

22 _____

23        [3]The ruling in Collier, which overruled a county tax
   collector's objection to confirmation of the debtor's chapter
24 plan, was later reversed in an unreported decision, In re
   Collier, 2009 WL 5449150 (Bankr. N.D. Cal., Jan. 5, 2009) on the
25 ground that the issue of whether the § 4013(b) was preempted by
   the Bankruptcy Code was moot.  Although the second, unpublished
26 decision reversed the first decision, some publishers continue to
   show that Rev. & Tax Code § 4103 was preempted by the first
27 Collier decision.

28                                -14-

1198, 1201 9th Cir. 2005) and <u>In re Kanter</u>, 505 F.2d 228, 230-31
(9th Cir. 1974), and notes a split of authority on the
constitutionality of exemption schemes enacted by states which
are applicable only to bankruptcy debtors.[4]  <u>Id.</u> at 717.  Based
on the foregoing authorities "in particular, <u>Kanter</u>," the <u>Collier</u>
court concluded that "Congress's intent in enacting 11 U.S.C. §
511(a) was clearly to prevent any distinction made between
bankruptcy and non-bankruptcy debtors with respect to the
interest rate imposed on delinquent tax claims."  <u>Id.</u> at 718.

It is unclear how the <u>Collier</u> court came to that conclusion,
however, considering the fact that none of the authorities cited
by <u>Collier</u> had anything at all to do with claims for rates of
interest on unpaid taxes or with the interpretation of the phrase
"applicable nonbankruptcy law."  This court disagrees with
<u>Collier</u>'s conclusion as to the "clear intent" of Congress.
<u>Collier</u> cites no authority for the proposition that Congress'
intent in enacting § 511(a) was to erase <u>any</u> distinction between
debtors in bankruptcy and debtors not in bankruptcy.  In fact,
the legislative record relating to § 511(a) indicates an entirely
different purpose for its enactment:

> Under current law, there is no uniform rate of interest
> applicable to tax claims.  As a result, <u>varying</u>
> <u>standards have been used to determine the applicable</u>

---

[4]The court notes that <u>Collier</u> was decided before the Ninth
Circuit Bankruptcy Appellate Panel in <u>Appelbaum</u> decided that
California's bankruptcy-specific exemption scheme was
constitutional and not preempted by the Supremacy Clause.

rate.  Section 704 of the [Bankruptcy Abuse Prevention
and Consumer Protection Act of 2005] amends the
Bankruptcy Code to add section 511 _for the purpose of_
_simplifying the interest rate calculation_.  It provides
that for all tax _claims_ (federal, state, and local),
including administrative expense taxes, the interest
rate shall be determined in accordance with applicable
nonbankruptcy law.

H. Report No. 109-31, § 704, to accompany S. 256 109th Cong., 1st
Sess. 2005, p. 101 (emphasis added).  There is no evidence in the
legislative history with respect to the enactment of § 511 which
indicates that Congress cared at all about preventing any
"distinction between bankruptcy and non-bankruptcy debtors."
Rather, the legislative history indicates that the purpose of §
511 was to prevent debtors from proposing varying interest rates
to be paid on tax claims.  Congress's intent in enacting § 511
was to prevent exactly what the debtor is trying to do in this
case.

Kanter also does not support the Collier court's conclusion
regarding the Congress' intent with respect to § 511.  Kanter,
which was decided under the Bankruptcy Act, was another case that
involved the constitutionality of a statute that exempted certain
property from the reach of a bankruptcy trustee.  In Kanter, the
statute at issue was Cal. Civ. Proc. Code § 688.1(b), which
permitted judgment creditors of a debtor to obtain a lien on a
debtor's cause of action, but which also limited the power of an

-16-

"assignee by operation of law," which limitation was intended by the California legislature to prevent the trustee in bankruptcy from administering the asset as property of the bankruptcy estate.   The <u>Kanter</u> court held that the state statute was an impermissible attempt to circumscribe the powers of the bankruptcy trustee under § 70 of the Bankruptcy Act, 11 U.S.C. § 110(a)(5), (c), and, as an "obstacle to the accomplishment an execution of the full purposes and objectives of Congress," violated the Supremacy Clause and was invalid.  <u>Kanter</u>, 505 F.2d at 231.  <u>Kanter</u> does not involve an analysis of the phrase "applicable nonbankruptcy law," nor does it involve an analysis of a statute that included provisions that were specific to <u>debtors</u> in bankruptcy as opposed to <u>debtors</u> not in bankruptcy. While <u>Kanter</u> is useful as an example of the application of Supremacy Clause analysis generally, its specific utility in interpreting Congressional intent with respect to § 511 highly questionable.

If neither the legislative history nor <u>Kanter</u> clearly support <u>Collier</u>'s conclusions regarding the intent of Congress in enacting § 511, this court can only conclude that the <u>Collier</u> court derived Congressional intent from the language of the statute itself, i.e. the <u>Collier</u> court concluded that the reference to "nonbankruptcy law" in § 511(a) is evidence of Congressional intent to limit the authority delegated to the states by § 511(a) to statutes that are not "bankruptcy specific."  <u>Collier</u>, however, cites no authority that supports

-17-

1 such an interpretation of the phrase "applicable nonbankruptcy
2 law" with respect to § 511 and, for the reasons discussed <u>infra</u>,
3 this court does not adopt such an interpretation.

4     In addition, the debtor's contention that application of RTC
5 § 4103(b) in bankruptcy cases causes non-uniform treatment of
6 debtors and nondebtors is not persuasive.  First, because RTC §
7 4103(b) provides that the 18% redemption penalty of  RTC §
8 4013(a) constitutes the assessment of interest for the purposes
9 of a claim in bankruptcy, without any modification to the
10 percentage itself, a debtor in bankruptcy will ultimately pay the
11 same amount on a debt for delinquent taxes that a non-debtor will
12 pay.  In that respect, debtors and non-debtors a treated
13 uniformly.

14     Second, the debtor's primary example of different treatment
15 of debtors and non-debtors is that debtors is that debtors who
16 would pay an 18% interest rate on tax claims would be allowed to
17 claim a deduction of the amount of interest paid on their federal
18 taxes pursuant to Internal Revenue Code § 163, which allows
19 taxpayers to claim a deduction for interest on indebtedness,
20 while non-debtors who paid a redemption penalty would not be
21 allowed to claim such a deduction.  The debtor asserts that there
22 do not appear to be any Tax Court cases addressing this issue,
23 but the Tax Court has in fact held that California real property
24 tax redemption penalties paid by non-bankruptcy taxpayers are
25 deductible in the taxable year in which they were paid.
26 <u>Reinhardt v. Commissioner of Internal Revenue</u>, 75 T.C. 47, 52
27
28                              -18-

(1980):

> That leaves for our consideration only the
> 1-percent-per-month redemption penalty. This charge,
> which accrued like interest over time, was, in effect,
> for the forbearance of the State. During the 5-year
> redemption period, California allowed petitioners to
> retain the amount needed to redeem the property without
> fear of losing their right of redemption. <u>Regardless of</u>
> <u>the fact that California deems this item a "penalty,"</u>
> <u>it has the characteristics of interest and we will</u>
> <u>treat it as such.</u> <u>Cf.</u> <u>Meilink v. Unemployment Reserves</u>
> <u>Comm'n</u>, 314 U.S. 564 (1942); <u>United States v. Childs</u>,
> <u>supra</u>; Rev. Rul. 60-127, 1960-1 C.B. 84; Rev. Rul.
> 60-128, 1960-1 C.B. 85.

The court is aware that, in contrast to the finding in <u>Reinhardt</u>, in 2001 the Ninth Circuit Court of Appeals in <u>Fed Deposit. Ins. Corp. v. County of Orange (In re County of Orange)</u>, 262 F.3d 1014 (9th Cir. 2001) found that with respect to RTC § 4103(a) that the statute was clear on its face and that "redemption penalties are just that, penalties, and not interest." <u>Id.</u> at 1021. <u>County of Orange</u> involved a bankruptcy dispute between the Federal Deposit Insurance Corporation ("FDIC") and the County of Orange, which was a debtor in a bankruptcy case under chapter 9. The FDIC had paid under protest property-tax penalties assessed against a bank in receivership and was seeking a refund of the amount paid, as under 12 U.S.C. §

-19-

1  1825 the FDIC was not liable for pre-acquisition penalties not

2  secured by a lien.  Id.  The Ninth Circuit held for the FDIC,

3  finding that redemption penalties are penalties and not interest.

4  It agreed with the FDIC that "18% a year is far above any

5  standard assessment of 'interest,' giving a redemption charge the

6  traditional punitive aspect of a penalty."  Id.  Since California

7  law did not create a lien for these penalty amounts, but would

8  have for interest charges, the FDIC was entitled to a refunds.

9      In response to the Orange County decision, in 2002 the

10  California legislature expanded Cal. Rev. & Tax Code § 2187 to

11  state that "every tax, penalty or interest, including redemption

12  penalty or interest, on real property is a lien against the

13  property assessed."  Cal. Bill Analysis, S.B. 1494 Assem., June

14  26, 2002.  The use by the legislature of "redemption penalty or

15  interest" in § 2187 is evidence of the legislature's intent and

16  belief that the redemption penalties be and are effectively an

17  interest rate.

18      Third, the debtor also argues that Rev. & Tax Code § 4103(b)

19  is rendered unenforceable by the Supremacy Clause because RTC §

20  4103(b) is an attempt by the California legislature to thwart the

21  priority scheme of Bankruptcy Code § 726.  Although the debtor

22  does not so state, the court believes that the debtor derives his

23  argument from an unpublished memorandum decision of the United

24  States Bankruptcy Court for the Northern District of California

25  issued on July 24, 2000 in the chapter 7 case of In re Shako Real

26

27

28                              -20-

<u>Estate Management, Inc.</u>[5] (the "Shako Decision").  In the Shako
Decision, the bankruptcy court characterized RTC § 4103(b) as an
"attempted bankruptcy carve-out" which reflected

> an attempt by the state legislature to avoid the
> priority scheme of Bankruptcy Code section 726 (in
> particular, subsection 726(a)(4)).  To the extent that
> section 4103 adopts a bankruptcy-specific exception, it
> "stands as an obstacle to the accomplishment and
> execution of the full purposes and objectives of
> Congress and is pre-empted by federal bankruptcy law.

<u>Id.</u>  The bankruptcy court held that § 4103(b) was in direct
conflict with § 726 because by re-labeling the penalty portion of
a tax claim as interest it allowed a county tax collector to have
as part of its allowed secured claim the amount of the unpaid
taxes due as well as the "interest," rather than having the
penalty portion subordinated to general unsecured claimants
pursuant to § 726(a)(4).

The Shako Decision, however, was decided prior to the
enactment of 11 U.S.C. § 511, which, as discussed above,
expressly authorized state legislation which set an interest rate
to be paid on tax claims.  Section 511 does not contain a
limitation that the interest rate set by the state be a
"reasonable" rate to be determined by prevailing economic
circumstances at the time that a bankruptcy case is filed.  It

---

[5]The court could not locate this memorandum decision in the
major online legal publishers.  It is available on the Northern
District's web site at http://www.canb.uscourts.gov/print/896.

-21-

allows the states to set an interest rate for tax claims in
bankruptcy cases; that California chose, even before the
enactment of § 511, to set a rate via RTC § 4103(b) that is
effectively and functionally identical to the rate paid by non-
debtor taxpayers is evidence that the state's intent matched that
of Congress: to eliminate uncertainty with respect to interest
rates on real property tax claims by making all persons owning
real property in California, debtor and non-debtor alike,
ultimately pay the same amount of money on unpaid real property
tax claims.

CONCLUSION

Because the court does not agree that the reference to
"applicable nonbankruptcy law" in § 511 limits states to
establishment of an interest rate for unpaid tax claims in
bankruptcy via statutes that are not bankruptcy specific, the
court finds that RTC § 4103(b) does not actually conflict with 11
U.S.C. § 511(a).  Nor is this a situation where Congress has
expressly preempted a state's ability to legislate the interest
rate on unpaid tax claims or regulated so pervasively that it
"occupies the field."  This is, in fact, a situation where
Congress has expressly and concurrently authorized state
legislation on the matter, thus inviting the states to "preempt"
federal law with respect to the calculation of interest on
secured claims for unpaid taxes.  For the foregoing reasons the
court finds that RTC § 4103(b) is not invalid as violative of the

-22-

1  Supremacy Clause and will sustain Rabobank's and the County's

2  objections.  The debtor must pay the County's secured claim in

3  full at a rate of 18% per annum.  Confirmation of the Plan will

4  be denied.

5       Having determined that RTC § 4103(b) is not unconstitutional

6  and that the debtor must propose a plan that pays 18% per annum

7  on the County's secured claim, the court need not reach the

8  alternative argument made by Rabobank; i.e. that if RTC § 4103(b)

9  is unconstitutional, the County could include the 18% redemption

10  penalty as part of its secured claim pursuant to § 506(b).

11       Finally, because confirmation of the Plan will be denied for

12  the reasons set forth above, the court does not reach Rabobank's

13  objections under 11 U.S.C. § 1325(a)(6) regarding the feasibility

14  of the Plan at this time.

15       The court will issue a separate order sustaining Rabobank's

16  and the County's objections and denying confirmation of the Plan.

17

18

19  Dated:  SEP 2 7 2012

20                                    Thomas C. Holman
                                     United States Bankruptcy Judge

21

22

23

24

25

26

27

28                          -23-